JS-6

FILED
CLERK, U.S. DISTRICT COURT

OCT 25, 2016

CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

# United States District Court
## Central District of California

Melody Armstrong et al.,

    Plaintiffs,

  v.

Ruan Transport Corporation et al.,

    Defendants.

EDCV 16-1143-VAP (SPx)

**Order Granting Plaintiff's Motion to Remand**

On August 22, 2016, Plaintiff Melody Armstrong ("Plaintiff") filed her Motion to Remand ("Motion") the instant action to the Superior Court of the State of California for the County of San Bernardino ("Superior Court"). (Doc. No. 16.) Defendant Ruan Transport Corporation ("Defendant") opposed the Motion on September 26, 2016. (Doc. No. 27.) Plaintiff did not file a reply.

After consideration of the papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced at the hearing, the Court GRANTS the Motion.

## I.  BACKGROUND

On August 28, 2015, Plaintiff filed her initial complaint against Defendant in Superior Court, alleging violations of various California Labor Code sections. (Doc. No. 1-1.) The alleged violations include failure to pay minimum wages in violation of sections 1194 and 1197 of the California Labor Code (id. ¶ 27); provide rest periods in violation of section 226.7 of the California Labor Code (id. ¶ 41); provide meal

periods in violation of section 226.7 and 512 of the California Labor Code (id.); provide accurate wage statements in violation of section 226(a) of the California Labor Code (id. ¶ 27); pay wages upon discharging employees in violation of section 201 of the California Labor Code (id. ¶ 70); and pay wages within 72 hours of employees quitting in violation of section 202 of the California Labor Code (id. ¶ 72).

Based on these violations, Plaintiff brought a class action on behalf of herself and those similarly situated. (Id. ¶¶ 15-31.) Plaintiff served Defendant with the complaint on May 2, 2016, and served Defendant with the summons on May 20, 2016. (Doc. No. 1 ¶ 6.)

Plaintiff seeks to recover unpaid wages, statutory penalties, and attorney's fees. (Doc. No. 1-1 at 29–30.)

## II.   LEGAL STANDARD

Removal jurisdiction is governed by statute. See 28 U.S.C. §§ 1441 et seq.; Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress" (citations omitted)). Defendants may remove a case to a federal court when a case originally filed in state court presents a federal question or is between citizens of different states. See 28 U.S.C. §§ 1441(a)-(b), 1446, 1453. Only those state court actions that originally could have been filed in federal court may be removed. 28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

Although the Class Action Fairness Act ("CAFA") gives district courts diversity jurisdiction to hear class actions, defendants must show that "any member of a class of plaintiffs is a citizen of a State different from any defendant" (minimum diversity); the number of members of the proposed plaintiff class exceeds 100 in the aggregate (numerosity); and "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" (amount in controversy). 28 U.S.C. §1332(d); see also Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1033-34 (9th Cir. 2008); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1020-21 (9th Cir. 2007).

A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation. Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014). When the removed complaint fails to allege a specific amount in controversy, or when the complaint alleges an amount in controversy less than the jurisdictional threshold, the removing defendant must prove by a preponderance of the evidence the amount in controversy is greater than $5,000,000. Rodriguez v. AT&T Mobility Servs., No. 13-56149, 2013 WL 4516757, at *6-7 (9th Cir. Aug. 27, 2013) (citing Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1348 (2013)); Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010) (citing Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007)). If a defendant fails to meet the requisite burden of proof, a court must remand for lack of subject matter jurisdiction.

In determining the amount in controversy, the Court considers not only the facts alleged in the complaint, taken as true for purposes of calculating the amount, but also "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997). "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Lewis, 627 F.3d at 400.

### III. DISCUSSION

Plaintiff contends that removal was improper because Defendant failed to provide evidence (1) of diversity of citizenship, (2) to show there are more than 100 class members, and (3) that there is more than $5,000,000 in controversy. (Doc. No. 16-1 at 3–4.) As the Court finds Defendant fails to carry its burden to show there is more than $5,000,000 in controversy, the Court declines to consider the diversity of citizenship and numerosity requirements.

#### A. THE AMOUNT-IN-CONTROVERSY REQUIREMENT

A class action cannot be removed to the district court under CAFA unless "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §1332(d). "[A] damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1199 (9th Cir. 2015).

Based on the allegations in the complaint, Defendants contends that when Plaintiff's damages for meal and rest-period penalties, waiting-time penalties, wage-

statement penalties, minimum-wage penalties, and attorneys' fees are combined, the amount in controversy is "at least $12,726,330.07." (Doc. No. 27 at 24.)

### 1. Meal- and Rest-Period Penalties

California law states:

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Cal. Lab. Code § 226.7.

Defendant argues a conservative estimate of its exposure for meal- and rest-period premiums is "$4,259,764.57." (Doc. No. 27 at 18.) To support this figure, it argues Plaintiff alleges, "Defendant had a practice of failing to provide '**all**' the legally required unpaid, off-duty meal periods and **all** the legally required off-duty rest periods to Plaintiff and the other California Class Members." (Id. at 17 (emphasis in original).) Based on this allegation, Defendant states, "although Plaintiff alleges that Defendant had a practice of failing to provide 'all' meal breaks and 'all' rest breaks, Defendant will use a conservative estimate of assuming one meal and rest period violation per workweek for purposes of its [exposure] calculations." (Id.) Thus, based on 1,099 class members, who worked a total of

118,015 workweeks during the relevant class period at an average hourly wage of $18.05, Defendant concludes the total exposure would be "$4,259,764.57 for meal and rest period premiums." (Id. at 18.)

Defendant's calculations, however, are flawed for two reasons: (1) they misstate the claims in Plaintiff's complaint and (2) they lack adequate factual support. First, paragraph nine of Plaintiff's complaint states, "Defendant failed to provide all the legally required unpaid, off-duty meal periods and all the legally required off-duty rest periods to Plaintiff and the other California Class Members as required by the applicable Wage Order and Labor Code." (Doc. No. 1-1 ¶ 9.) From this, Defendant jumps to the conclusion that "one meal and rest period violation per workweek" is a "conservative estimate" for its exposure (Doc No 27 at 17). Defendant's reasoning appears to be based on an assumption that by stating, "Defendant failed to provide all the legally required unpaid, off-duty meal [and rest] periods," Plaintiff means "Defendant failed to provide [each and every] legally required unpaid, off-duty meal [and rest] period [to every class member.]" This is far from a reasonable assumption. The allegation "Defendant failed to provide all the legally required. . . meal [and rest] periods" could also mean: (1) Defendant denied one class member one meal and rest break once per year, (2) Defendant denied a small group of class members one meal and rest period once a month, or (3) Defendant denied half the class members all meal and rest periods every week. In each of these scenarios, Defendant "failed to provide all the legally required. . . meal [and rest] periods." Hence, there is no logical basis for the Court to assume Plaintiff means "Defendant filed to provide [each and every] legally required unpaid, off-duty meal [and rest] period [to every class member,]" as Defendant contends.

6

Second, Defendant did not present any facts supporting its assumption that "one meal and rest period violation per workweek" per class member is appropriate "for . . . its [exposure] calculations." The only evidence Defendant presents to support its assumption is a declaration by its Human Resources Business Partner Ben Williams. (Doc. No 27 at 16.) Williams's declaration only sets forth (1) the number of class members (Doc. No. 27-2 ¶¶ 5–6), (2) the average amount of days worked each week (id. ¶ 8), (3) the average amount of hours worked per day (id. ¶ 7), (4) the average length of pre- and post-trip truck inspections (id. ¶ 9), (5) the average hourly rate of Defendant's truck drivers (id. ¶ 11–13), (6) the frequency wage statements were issued (id. ¶ 14), and (7) the total hours worked by Defendant's truck drivers (id. ¶ 15). Nowhere does Williams address the possible rate of meal- and rest-period violations, the number of complaints Defendant received regarding the lack of meal and rest periods, Defendant's policy addressing how meal and rest periods are scheduled, or anything else to provide factual support for Defendant's assumption of "one meal and rest period violation per workweek" for every class member. Thus, as Defendant "provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week," the Court finds it has failed to sustain its evidentiary burden for purposes of removal. Weston v. Helmerich & Payne Inter. Drilling Co., No. 1:13-cv-01092-LJO-JLT, 2013 WL 5274283, at *6 (E.D. Cal. Sept. 17, 2013).

Case law supports the conclusion Defendant may not rely on statistical assumptions to prove the amount-in-controversy requirement. In Weston, a former employee sued a drilling company that previously employed him for California Labor Code violations almost identical to the ones Plaintiff alleges. 2013 WL 5274283 at *1. Before discovery began, the drilling company removed the case to

district court, and the employee filed a motion for remand. Id. To establish the amount in controversy, the drilling company produced a declaration by its personnel manager, who compiled data showing, among other things, the drilling company "'employed 749 non-exempt and hourly California-based rig employees ... from June 5, 2009 to the present.' In addition, [the personnel manage] report[ed] 'there are approximately 475 non-exempt and hourly California-based rig employees who ended their employment with [Defendant], either voluntarily or involuntarily.'" Id. at 3. The declaration also stated "the average number of work weeks during the class period, and the average hourly wage of the employees." Id. at 5. Much like Defendant, in lieu of using 100% violation rates, the drilling company used more conservative assumptions, such as one meal- and rest-break violation per week, four hours of overtime violations per week, and a ten-day waiting period violation for each employee. Id. at 4. This was not enough to prove the required amount in controversy. Id. at 6. The court made clear, "just as the factual justification was lacking for the use of [a] 100% violation rate, the evidence supporting the justification for using the revised rates likewise is missing," and "the fact that [the drilling company's] revised figures are smaller than [a 100% violation rate] does not lessen the burden of providing evidence, rather than assumptions" to support the calculations. Id.

In Garibay v. Archstone Communities LLC, 539 Fed. App'x 763 (9th Cir. 2013), an unpublished Ninth Circuit decision, the court reached a similar conclusion. In Garibay, an employee sued an employer for meal- and rest-break violations, failure to provide accurate wage statements, and waiting-time penalties. Id. at 764. Before discovery, the employer removed the case to district court, and the employee moved to remand. Garibay v. Archstone Communities LLC, No. CV

12-10640 PA (VBKx) at 1 (C.D. Cal. filed Feb. 4, 2013.) Much like Defendant, in attempting to show the amount in controversy was greater than $5,000,000, the employer used conservative estimates of (1) two missed breaks per week for each employee, (2) thirty days of waiting-time penalties for each employee, and (3) inaccurate wage-statement penalties for every paycheck received by every employee. Id., Doc. No. 27 at 17–20. To support these calculations, the employer provided a declaration by its "supervisor of payroll, which set[] forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages." Garibay, 539 F. App'x at 764. This, however, was not sufficient evidence to show the amount in controversy was over $5,000,000. Id. Specifically, the court stated, "[the employer] failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than 'one missed rest period per paycheck or one missed rest period per month.'" Id. Hence, "[the employer's] evidence was insufficient to support removal jurisdiction under CAFA." Id.

Other courts have held similarly. Rodriguez v. US Bank Nat'l Ass'n, No. 216CV05590 CAS (RAOx), 2016 WL 5419403, at *6 (C.D. Cal. Sept. 26, 2016) ("Here, because defendant's calculations are based on attenuated and unsupported assumptions, defendant has failed to demonstrate by a preponderance of the evidence that Section 226(e) penalties amount to $10,516,000 or even that they exceed $5,000,000."); Munoz v. Central Parking Sys., Inc., 2010 WL 3432239, at *2 (C.D. Cal. Aug. 30, 2010) (dismissing Defendant's assumption of one meal period violation per week because Defendant "fail[ed] to provide . . . evidentiary support"); see Nolan v. Kayo Oil Co., No. C 11-00707 MEJ, 2011 WL 2650973, at *4 (N.D. Cal. July 6, 2011) ("Simply assuming that every employee . . . worked at least one hour of

9

overtime a week, without some facts or evidence to support these assumptions, is insufficient to meet Defendant's evidentiary burden."); Ray v. Nordstrom Inc., No. 2:11-cv-07277-JHN (CWx), 2011 WL 6148668, at *3 (C.D. Cal. Dec. 9, 2011) (finding Plaintiff's allegation that Defendant "failed to pay all California hourly employees at least some regular and overtime hours" insufficient to support Defendant's assumption that "purported class members missed . . . one hour of overtime pay per pay period" (internal quotation marks omitted)); Roth v. Comerica Bank, 799 F. Supp. 2d 1107, 1119-20 (C.D. Cal. 2010) ("More significantly, defendants' calculation admittedly rests on the speculative assumption that every class member was denied three to five hours of overtime pay every week.").[1]

The Court acknowledges other district courts have found to the contrary. See, e.g., Wilson v. Best Buy Co., Inc., No. 2:10-cv-3136-GEB-KJN, 2011 WL 445848, at *2 (E. D. Cal. Feb. 8, 2011) (finding Plaintiff's allegation he worked overtime "[d]uring the relevant time period" sufficient to support Defendant's assumption that each class member was denied one hour of overtime pay per week (internal quotation marks omitted)). The Court is unpersuaded by such cases primarily because "[a]s the employer, Defendant[s] ha[ve] access to employment and payroll records that would allow [them] to provide more accurate figures," rather than mere estimations. See Nolan, 2011 WL 2650973, at *5. Furthermore,

---

[1] Defendant cites two cases, Roa v. TS Staffing Services., Inc., 2015 WL 300413 (C.D. Cal. Jan. 22, 2015), and Sanchez v. The Ritz Carlton, 2015 WL 4919972 (C.D. Cal. Aug. 17, 2015), that indicate plaintiffs must put forth evidence to rebut employers' assumptions about the amount in controversy. (Doc. No. 27 at 10–11) However, cases cited supra, including Garibay and Weston, held employers did not put forth enough evidence to establish a $5,000,000 amount in controversy, even though plaintiffs disputed the employers' claims without producing their own evidence.

Defendants have failed to show how often the class members were deprived of meal and rest breaks. Such a showing could possibly justify Defendants' assumption, but on this record, the Court finds Defendants have failed to meet their burden by a preponderance of the evidence.

### 2. Waiting-Time Penalties

Section 203 of the California Labor Code states:

> If an employer willfully fails to pay, without abatement or reduction, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203.

Defendant argues a conservative exposure estimate for waiting-time premiums is "$2,425,591.48." (Doc. No. 27 at 20.) To support its calculation, Defendant explains, "Plaintiff affirmatively alleges Defendant 'has not tendered payment of all wages owed as required by law' and therefore seeks 'thirty days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment during the CALIFORNIA LABOR SUB-CLASS PERIOD,'" citing paragraphs 73 and 74 of the complaint. (Id. at 19.) Then, Defendant continues, "[b]y asserting class claims for Section 203 penalties, Plaintiff claims that every putative class member is owed waiting-time penalties. Therefore, it is reasonable for Defendant to assume that each putative class member would be

11

entitled to the maximum 30 days of waiting time penalties if Plaintiff was to prevail." (Id.)  Thus, as there are approximately 560 class members who terminated employment during the class period, and the average wage was $144.00 per workday, the total exposure is $2,425,591.48.  (Id. at 20.)

Defendant's calculations, however, are flawed because they misstate the complaint's allegations.  Although Defendant relies on the above partial quotations to argue "Plaintiff claims that every putative class member is owed waiting time penalties," when the very same sentences are read in their entirety, it is clear Plaintiff is not claiming "every putative class member is owed waiting time penalties." (Id. at 19.)  Specifically, paragraphs 73 and 74 of Plaintiff's complaint state, in full,

> 73.  *The employment of PLAINTIFF and many CALIFORNIA LABOR SUB-CLASS Members has terminated* and DEFENDANT has not tendered payment of all wages owed as required by law.
>
> 74.  Therefore, as provided by Cal Lab. Code § 203, *on behalf of herself and the members of the CALIFORNIA LABOR SUB-CLASS whose employment has terminated and who have not been fully paid their wages due to them,* PLAINTIFF demands thirty days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment during the CALIFORNIA LABOR SUB-CLASS PERIOD and demands an accounting and payment of all wages due, plus interest and statutory costs as allowed by law.

(Doc. No. 1-1 ¶¶ 73–74. (emphasis added))

Thus, as the complaint is worded, it is clear Plaintiff is not alleging "every putative class member is owed waiting time penalties." In fact, Plaintiff specifically states her claims are limited to "herself and the members of the CALIFORNIA LABOR SUB-CLASS whose employment has terminated and who have not been fully paid their wages due to them." (Doc. No. 1-1 ¶ 74.) The closest Plaintiff comes to alleging a specific number of violations is stating "the employment of . . . many CALIFORNIA LABOR SUB-CLASS Members has terminated and DEFENDANT has not tendered payment of all wages owed as required by law." (Id. ¶ 73.) "Many" is defined as "consisting of or amounting to a large but indefinite number" and depending upon the context and speaker, can mean anything more than one. (Merriam-Webster, <u>Definition of Many</u>, http://www.merriam-webster.com/dictionary/many.) Nevertheless, by specifying "many CALIFORNIA LABOR SUB-CLASS Members"—instead of simply "CALIFORNIA LABOR SUB-CLASS Members"—Plaintiff indicated she is certainly not alleging "every putative class member is owed waiting time penalties."

Defendant also alleges "[b]ecause premiums for missed meal periods and rest breaks are considered wages, and not penalties, the failure to pay any such premiums due and owing at the time of separation could trigger Section 203 penalties." (Doc. No 27 at 18.) As discussed above, however, Defendant provided no factual basis for an estimate of how many meal- and rest-period violations are alleged to have occurred. <u>Garibay</u>, 539 F. App′x at 764 ("Archstone assumes that each employee would be entitled to the maximum statutory [waiting-time] penalty, but provides no

evidence supporting that assertion."). Thus, it is unclear how many class members would be owed section 203 penalties based on nonpayment of section 203 penalties.

Accordingly, the Court finds Defendant has failed to sustain its evidentiary burden regarding waiting-period penalties for the purposes of removal.

### 3. Wage-Statement Penalties

Defendant estimates its exposure for wage-statement penalties is $1,465,850.00. (Doc. No. 27 at 22.) Defendant bases its calculations on Plaintiff's statements that, "Defendant failed to provide Plaintiff and the other members of the California Class with complete and accurate wage statements which failed to show, among other things, the correct minimum wages for time worked, and allocation of lawfully required, paid, and off-duty rest periods." (Id. at 20.) Thus, Defendant reasons, "because there was at least two unpaid meal and rest premiums per week, Defendant may also reasonably assume that each of the bi-weekly paychecks issued to employees failed to reflect the unpaid premiums such that employees might recover penalties under Cal. Lab. Code § 226(e)(1)." (Id.)

Such an assumption is unwarranted. As discussed above, Defendant provided no factual basis for its estimate of how many meal and rest period violations occurred. Munoz v. Cent. Parking Sys., Inc., No. CV 10-6172 PA, 2010 WL 3432239, at *2 (C.D. Cal. Aug. 30, 2010). Thus it is unclear how many class members would be owed penalties under section 226 of the California Labor Code. Accordingly, the Court finds Defendant has failed to sustain its evidentiary burden regarding wage-statement penalties for the purposes of removal.

### 4. Minimum-Wage Penalties

Defendant estimates its exposure for minimum-wage penalties is $2,029,858.00. (Doc. No. 27 at 23.) Defendant bases its calculations on Plaintiff's statements that,

> PLAINTIFF and the other CALIFORNIA CLASS Members employed by DEFENDANT performed these manual tasks but were not paid the minimum wages to which they were entitled because of DEFENDANT's systematic policies and practices of failing to correctly record all time worked, including, but not limited to, time spent during pre and post trip inspections of DEFENDANT's trucks and time spent waiting for DEFENDANT's loads to be ready for transport.

(Doc. No. 1-1 ¶ 6.)

Based on this and Williams's declaration stating, "each pre-trip and post-trip inspection lasts, on average, at least approximately 15 minutes," (Doc. No. 27-2 ¶ 9) Defendant assumes "a violation rate of one hour of missed minimum wages per work week [per employee], in spite of Plaintiff alleging at least 2.5 hours of unpaid time" (Doc. No. 27 at 23).

Again, as discussed above, Defendant's calculations are not adequately supported because Defendant offers no facts to show how often these violations allegedly occurred. Nowhere does Williams's declaration address the likely average rate of minimum-wage violations, the number of complaints Defendant received

15

regarding minimum-wage violations, or anything else that provides factual support for Defendant's assumption of "a violation rate of one hour of missed minimum wages per work week [per class member.]" See Munoz, 2010 WL 3432239 at *2 (Holding that an employer may not assume employees "were not paid minimum wage one time per week" without further supporting evidence.). Accordingly, the Court finds Defendant has failed to sustain its evidentiary burden regarding minimum-wage penalties for the purposes of removal.

### 5. Attorneys' Fees

Defendant calculated its exposure for attorneys' fees as 25% of Plaintiff's projected damages. (Doc. No. 27 at 24.) While courts in the Ninth Circuit have considered potential attorneys' fees in calculating the amount in controversy in wage-and-hour cases, Defendant's fee estimate is based on a conjectural damages calculation and should be disregarded. See Campbell v. Vitran Express, Inc., No. CV-10-04442-RGK(SHx), 2010 WL 4971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.")

## IV. CONCLUSION

The Court recognizes defendants' burden of proof to show an amount in controversy above five-million dollars requires them to navigate a treacherous strait between Scylla and Charybdis. Should defendants stray too far right—by providing minimal or speculative evidence of their alleged violations—they risk losing the ability to litigate in federal court under CAFA. On the other hand, should

defendants stray too far left—by providing ample evidence of their alleged violations—they may be admitting liability and ultimately lose their case. Nonetheless, there are options that avoid such risks. For instance, defendants may wait until plaintiffs conduct enough discovery to show their claims exceed five-million dollars, or if plaintiffs attempt to remain in state court even after discovery efforts clearly show the amount-in-controversy exceeds five-million, defendants may present their own investigation results to the court and remove the case to district court. Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1125 (9th Cir. 2013) ("even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document"). Alternatively, if defendants wish to remove a case before discovery occurs, "there are methods of determining a reasoned basis for the calculations such as random sampling and . . . using actual numbers, rather than averages to determine the amount put in controversy by the complaint." Weston, 2013 WL 5274283 at *6.

For the reasons stated above, the Court finds Defendant has failed to sustain its evidentiary burden for the purposes of removal. Accordingly the Court GRANTS Plaintiff's Motion and DIRECTS the Clerk to REMAND this action to the Superior Court of the State of California for the County of San Bernardino.

**IT IS SO ORDERED.**

Dated: 10/25/16

Virginia A. Phillips
Chief United States District Judge